IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UTILITIES MARKETING GROUP, LLC,
AGR FIELD SERVICES, LLC, and
ENERGY PROFESSIONALS, LLC

      Plaintiffs,

v.                                   Case No.:  8:15-cv-01966-RAL-TBM

JAMES WARRICK, ANGELA WARRICK,
GEORGE TAPIA, AMANDA TAPIA, EXCEL
NETWORK, LLC, EXCEL RESOURCES, LLC,
NWELITE MARKETING, LLC, and NWE, LLC,

      Defendants / Third-Party Plaintiffs,

v.

STEPHEN UPHAM,

      Third-Party Defendant.
_____/

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFFS' RECENT SUBPOENAS TO THIRD PARTY BANKS (WHICH REQUIRE COMPLIANCE BY SEPTEMBER 30, 2016)

On September 16, 2016, Plaintiffs Utilities Marketing Group, LLC, AGR Field Services, LLC, and Energy Professionals, LLC served notice of two third-party subpoenas directed to Wells Fargo and Bank of America. With these subpoenas, Plaintiffs seek extensive personal banking information about the four individual Defendants as well as financial information about the Excel Defendants beyond what the Court deemed discoverable in its July 21, 2016 order (D.E. 120). Plaintiffs have demanded responses to the subpoenas by **September 30, 2016**, and thus, Defendants ask the Court to order an expedited response to this Motion.

1.      **Overview of Plaintiffs' Third Party Subpoenas to Wells Fargo and Bank of America.**

The 1991 amendments to Rule 45 authorized attorneys to sign subpoenas as officers of the court. *See* FED. R. CIV. P. 45(a)(3). But the rules advisory committee recognized that the new power to issue subpoenas necessarily came with "increased responsibility and liability for the misuse of [the] power." Notes of Advisory Committee on Rules—1991 Amendment to FRCP 45. Subpoenas – like all other discovery tools – must not be used "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation…." FED. R. CIV. P. 26(g)(1)(B)(ii).

The document requests in Plaintiffs' subpoenas to Wells Fargo and Bank of America are, among other things, (A) broad enough to demand production of a cancelled check for $20 Defendant George Tapia might have written for fantasy football dues five years ago,[1] and (B) invasive enough to require the banks to give Plaintiffs the individual Defendants' confidential credit reports, complete with their credit scores, social security numbers, and complete credit histories.[2] But this is not a case of an aggressive litigant getting carried away while trying to push the limits of discovery. When viewed in conjunction with the parties' extensive briefing and oral arguments and two prior Court orders addressing the discoverability of Defendants' financial information, it is hard to discern any plausible proper motive for Plaintiffs' subpoenas.

---

[1] Exh. 1 – Subpoena to Wells Fargo, p. 12 (Request No. 11: "Copies of cancelled checks written by the Tapias or Excel."); Exh. 2 – Subpoena to Bank of America, p. 12 (Request No. 11: "Copies of cancelled checks written by the Warricks or Excel.").

[2] Exh. 1 – Subpoena to Wells Fargo, p. 11 (Requests Nos. 2 and 3 seek all documents relating to the Tapias' loan applications or credit line applications); Exh. 2 – Subpoena to Bank of America, p. 11 (Requests Nos. 2 and 3 seek all documents relating to the Warricks' loan applications or credit line applications).

### 1.1.   Regarding discovery into Defendants' financial information, the parties and the Court have already been there and done that – twice.

In October 2015, Plaintiffs first requested "[a]ll accounting documents, tax records, and financial statements … from January 2014 to present" for each individual and entity Defendant.[3] To date, Plaintiffs have filed two motions to compel regarding this request.[4] In response to the first motion, the Court ruled that Plaintiffs' requests for financial information "are overbroad and need to be substantially justified and narrowed before the Court will require compliance."[5]

Plaintiffs then moved to compel Defendants to respond to an amended version of Plaintiffs' initial request, limited to "all financial records from September 19, 2014, to the present related to revenue received by any Excel entity" with reference to revenues received from seven specific energy suppliers.[6] The Court decided that "some measure of discovery into the financial relationship with these seven clients that Plaintiffs claim have been converted by Defendants is appropriate."[7] So instead of directing Defendants to produce "all financial records" as Plaintiffs had requested, the Court ordered production of documents "that evidence any revenue received from Commerce Energy, Entrust, Family Energy, IDT Energy/Residents' Energy, Just Energy, Liberty Power, and Spark Energy from September 19, 2014 to the present."[8]

---

[3] *See* Plaintiffs' Motion to Compel, for Discovery Referral, and for Sanctions, p. 19 (D.E. 60) (restating Request No. 16 to J. Warrick, No. 9 to A. Warrick, No. 12 to G. Tapia, No. 12 to A. Tapia, No. 9 to NWE, and No. 10 to Excel).

[4] Plaintiffs' Motion to Compel, for Discovery Referral, and for Sanctions, p. 19 (D.E. 60); Plaintiffs' Motion to Compel Production and for Attorneys' Fees, pp. 7-11 (D.E. 91).

[5] Order, May 18, 2016, p. 3 (D.E. 81).

[6] *See* Plaintiffs' Motion to Compel Production and for Attorneys' Fees, p. 7 (D.E. 91).

[7] Order, July 21, 2016, p. 4 (D.E. 120).

[8] Order, July 21, 2016, p. 4 (D.E. 120). Subsequently, Defendants produced documents bates-numbered DEF_00027621 – DEF_00027631, consisting of reports generated from the Excel entities' operating accounts (maintained at Bank of America) specifically listing every single incoming funds transfer from the seven relevant energy suppliers.

In sum, based on the parties' written submissions for Plaintiffs' two motions to compel and on two oral arguments, the Court granted discovery of financial information limited to: (A) revenues; (B) of the Excel entity Defendants; (C) from seven specific energy suppliers; and (D) generated within the time period of September 19, 2014 to the present. And the Court made it clear that to "the extent not granted" by the July 21, 2016 discovery order, Plaintiffs' motion to compel "is denied."[9]

### 1.2. Plaintiffs' subpoenas demand virtually all personal financial and banking information of the individual Defendants for as long as they have banked with Wells Fargo or Bank of America.

The financial information Plaintiffs now seek through their subpoenas **exceeds** not only what Plaintiffs sought in their last motion to compel or what the Court ultimately ordered, **but also** what Plaintiffs requested in the first place, back in October 2015. From Wells Fargo, Plaintiffs demand:

1. "All Documents which refer or relate to the Tapias or Excel, including all communications between [Wells Fargo] and the Tapias or Excel;"

2. "All Documents which refer or relate to any loan applications from the Tapias or Excel, including any documents submitted by the Tapias or Excel in connection with any loan application and all analysis by [Wells Fargo] related to approval or denial of any such applications;"

3. "All documents related to any line of credit or other credit extended by [Wells Fargo] to the Tapias or Excel;"

4. "All Documents which refer or relate to any loans made by [Wells Fargo] to the Tapias or Excel, including any agreements related to any such loan;"

5. "All actual or pro forma financial statements or projections submitted to You by the Tapias or Excel or prepared by [Wells Fargo] related to the Tapias or Excel;"

---

[9] Order, July 21, 2016, p. 5 (D.E. 120).

6. "All Documents which refer or relate to any business or strategic plan prepared by or for the Tapias or Excel;"

7. "All Documents related to taxes paid by or withheld from the Tapias or Excel, including any 1099 forms;"

8. "All Documents which refer or relate to any agreements between [Wells Fargo] and the Tapias or Excel, including banking account, market or trust agreements;"

9. "All Documents which refer or relate to the daily or other periodic activities or transactions for any account related to the Tapias or Excel, including any records of deposits, withdrawals or electronic transfers;"

10. "All Documents which refer or relate to monthly, quarterly or year-end statements for any account provided by [Wells Fargo] to the Tapias or Excel;" and

11. "Copies of cancelled checks written by the Tapias or Excel."[10]

Plaintiffs' subpoena to Bank of America is much the same, demanding:

1. "All Documents which refer or relate to the Warricks or Excel, including all communications between [Bank of America] and the Warricks or Excel;"

2. "All Documents which refer or relate to any loan applications from the Warricks or Excel, including any documents submitted by the Warricks or Excel in connection with any loan application and all analysis by [Bank of America] related to approval or denial of any such applications;"

3. "All documents related to any line of credit or other credit extended by [Bank of America] to the Warricks or Excel;"

4. "All Documents which refer or relate to any loans made by [Bank of America] to the Warricks or Excel, including any agreements related to any such loan;"

5. "All actual or pro forma financial statements or projections submitted to You by the Warricks or Excel or prepared by [Bank of America] related to the Warricks or Excel;"

6. "All Documents which refer or relate to any business or strategic plan prepared by or for the Warricks or Excel;"

---

[10] Exh. 1 – Subpoena to Wells Fargo, pp. 11-12.

7. "All Documents related to taxes paid by or withheld from the Warricks or Excel, including any 1099 forms;"

8. "All Documents which refer or relate to any agreements between [Bank of America] and the Warricks or Excel, including banking account, market or trust agreements;"

9. "All Documents which refer or relate to the daily or other periodic activities or transactions for any account related to the Warricks or Excel, including any records of deposits, withdrawals or electronic transfers;"

10. "All Documents which refer or relate to monthly, quarterly or year-end statements for any account provided by [Bank of America] to the Warricks or Excel;" and

11. "Copies of cancelled checks written by the Warricks or Excel."[11]

When compared to Plaintiffs' October 2015 request for financial information propounded on Defendants, to the written briefs related to Plaintiffs' two motions to compel, to the Court's discussion with counsel in two hearings, and to the Court's decision to permit only "some measure of discovery" into the Excel entities' finances,[12] the requests in Plaintiffs' subpoenas to Wells Fargo and Bank of America appear to have been created in an entirely different plane of existence. For example, even though the Court only granted limited discovery into the Excel entities' revenues from seven energy suppliers,[13] Plaintiffs' subpoenas instruct Wells Fargo and Bank of America to produce documents regarding the Tapias' and the Warricks' home mortgages, their personal credit card accounts, their personal taxes, and even their confidential and highly sensitive credit reports kept by the banks as part of loan or credit application files.[14] If the Tapias or the Warricks have ever written a check to a babysitter, Plaintiffs want the banks to

---

[11] Exh. 2 – Subpoena to Bank of America, pp. 11-12.

[12] Order, July 21, 2016, p. 4 (D.E. 120).

[13] Order, July 21, 2016, p. 4 (D.E. 120).

[14] Exh. 1 – Subpoena to Wells Fargo, pp. 11-12 (Requests Nos. 2-4, 7); Exh. 2 – Subpoena to Bank of America, pp. 11-12 (Requests Nos. 2-4, 7).

produce a copy.[15] And because Plaintiffs have set no time restrictions for their document requests,[16] the subpoenas would cover virtually all financial and banking information of the Tapias and the Warricks for as long as they have individually or for other unrelated businesses banked with Wells Fargo or Bank of America. The Court, on the other hand, limited the scope of discovery into finances to the time period of September 19, 2014 to the present.[17]

Even focusing solely on what the subpoenas seek about the Excel entities' finances, Plaintiffs have still substantially departed from the parties' prior arguments, the Court's rulings, and the claims and defenses asserted in this case. Copies of every cancelled check from the Excel entities' accounts would be responsive – from employee expense reimbursement checks, to non-direct deposit payroll checks, to office rent checks, and everything in between.[18] Records of all incoming deposits, including deposits that do not reflect revenues and those that reflect revenues from entities Plaintiffs have never before claimed to be at issue in this case, would fall within the scope of the subpoenas.[19] In sum, each request in the subpoenas independently exceeds the limited discovery permitted by the Court, based on two fully briefed and argued motions.

**2.      Efforts to Confer about Discovery Regarding Defendants' Finances.**

After Defendants served their supplemental production in response to the Court's July 21, 2016 discovery order, the parties have again had to confer about their disagreements on the permissible scope of discovery into Defendants' finances. The day after Defendants'

---

[15] Exh. 1 – Subpoena to Wells Fargo, p. 12 (Request No. 11); Exh. 2 – Subpoena to Bank of America, p. 12 (Request No. 11).

[16] *See generally* Exh. 1 – Subpoena to Wells Fargo; Exh. 2 – Subpoena to Bank of America.

[17] Order, July 21, 2016, p. 4 (D.E. 120).

[18] Exh. 1 – Subpoena to Wells Fargo, p. 12 (Request No. 11); Exh. 2 – Subpoena to Bank of America, p. 12 (Request No. 11).

[19] Exh. 1 – Subpoena to Wells Fargo, p. 12 (Requests Nos. 9, 10); Exh. 2 – Subpoena to Bank of America, p. 12 (Requests Nos. 9, 10).

supplemental production, Plaintiffs' former counsel Kimrey asserted by email that Defendants had failed to comply with the Court's rulings and asked to confer further by phone.[20] During counsel's August 25, 2016 phone conference, Plaintiffs' counsel expressed several concerns regarding Defendants' supplemental production.[21]

The day after the teleconference, Defendants' counsel sent a detailed letter to Plaintiffs' counsel addressing Plaintiffs' concerns. Regarding financial disclosures, Defendants' counsel explained Defendants' understanding that the Court's July 21, 2016 order compelled full disclosure of all revenues received by the Excel Defendants on or after September 19, 2014 from the seven energy suppliers listed in the order.[22] Defendants interpreted the Court's order as being flexible on the categories of documents to produce, so long as Defendants fully disclosed the Excel entities' revenues from the seven specifically named energy suppliers.[23]

Accordingly, Defendants' counsel explained that the bates range DEF_00027621 – DEF_00027631 consisted of reports generated from the Excel entities' operating accounts (maintained at Bank of America) specifically listing every single incoming funds transfer from the seven relevant energy suppliers.[24] The reports were separated by entity to allow Plaintiffs and their expert to easily determine: (A) the aggregate revenue received by each Excel entity from each of the seven energy suppliers at issue; (B) the dates of each payment received from each of the seven energy suppliers; and (C) the specific amount of each incoming transfer.[25]

---

[20] Exh. 3 – Email from Kimrey to Patel, Aug. 12, 2016, p. 1.
[21] *See generally* Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016.
[22] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, pp. 2-3.
[23] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, pp. 2-3.
[24] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 2.
[25] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 2.

Defendants' counsel further explained:

− That Defendants had previously produced all sales and commission reports (also reflecting revenues) through February 3, 2016;[26]

− That Defendants did not understand the Court's order to require production specifically of sales and commission reports from February 3, 2016 through August 2016, so long as Defendants fully disclosed the Excel entities' revenues from the seven energy suppliers at issue through the date of the supplemental production;[27]

− That Defendants would nonetheless consider incurring the costs to forensically collect, process, review, and produce the February 2016 – August 2016 sales and commission reports if Plaintiffs identified any discrepancies between the pre-February 2016 sales and commission reports and the revenue reports Defendants produced in response to the Court's order;[28]

− That at the time of production, Defendants knew that their internal Quickbooks accounting file was not up to date, and thus, reports generated from the accounting software would not have complied with the Court's order, since those reports would not have fully and accurately disclosed the revenues at issue;[29]

− That Defendants expected the Excel entities' outside accountant to update the Quickbooks files in the ordinary course of meeting the Excel entities' September 15, 2016 tax filing deadline;[30] and

---

[26] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 3.
[27] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 3.
[28] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 3.
[29] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 6.
[30] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 6.

– That if it would avoid a discovery motion, Defendants would agree to supplement their production with revenue reports generated from up-to-date and accurate Quickbooks files shortly after September 15, 2016.[31]

Defendants' counsel's August 26, 2016 letter also discussed Plaintiffs' concerns (A) about Defendants' supplemental production of the communications compelled by the Court's order, (B) about Defendants' basis to designate six emails out of the entire supplemental production as attorneys' eyes only, (C) about the reasons for a handful of redactions, and (D) about Defendants' position on the completeness of third-party Driven, Inc.'s production in compliance with Plaintiffs' subpoena to Driven.[32] Some of these issues appear to have been resolved, and the others do not involve discovery into Defendants' finances, and thus, are not directly relevant to this Motion.

On September 6, 2016, Plaintiffs' current counsel Henderson notified Defendants' counsel that he would be substituting in for Plaintiffs' former counsel Kimrey. Counsel briefly discussed various case issues on September 8, 2016, and a few days later, Henderson sent a letter to Defendants' counsel restating Plaintiffs' contention that Defendants had failed to comply with the Court's July 21, 2016 order.[33] Henderson's September 10, 2016 letter does not acknowledge or respond to Defendants' offer to supplement their production with revenue reports generated from Quickbooks once the Excel entities' external accountant confirms the accuracy of the Quickbooks files.[34] Instead, Henderson implied that the entire Quickbooks files were subject to

---

[31] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 7.
[32] Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, pp. 3-7.
[33] Exh. 5 – Letter from Henderson to Patel, Sept. 10, 2016, pp. 1-3.
[34] *See* Exh. 4 – Letter from Patel to Kimrey, Aug. 26, 2016, p. 7.

the Court's July 21, 2016 order,[35] even though the order makes no mention of Quickbooks or any accounting software and expressly limits the information subject to disclosure to revenues from seven specific entities.[36] The full Quickbooks files would contain the entire financial history of the Excel entities.

On September 16, 2016, Defendants' counsel responded with yet another detailed letter discussing the various pending discovery issues and offering specific suggestions to resolve some, if not all, of the parties' disagreements.[37] On the issue of the financial disclosures, Defendants' counsel noted the parties' different interpretations of the language in the Court's July 21, 2016 order, and accordingly, suggested that the parties discuss submitting a joint motion to the Court for clarification.[38] Since Defendants are not trying to avoid their discovery obligations or the Court's orders, a short, non-contentious joint request for clarification could be the most efficient and least burdensome path to resolving the parties' dispute over the completeness of Defendants' supplemental production.

As it turned out, the same day Defendants' counsel sent a detailed letter to Henderson with multiple proposals to resolve various disagreements, Plaintiffs provided notice of the subpoenas to Wells Fargo and Bank of America at issue in this Motion.[39] So while Defendants proposed a joint request for clarification to the Court, agreeing to act based on the Court's response, Plaintiffs chose to escalate the parties' disagreement by demanding directly from two third-party banks the production of virtually all financial and banking information of the

---

[35] *See* Exh. 5 – Letter from Henderson to Patel, Sept. 10, 2016, p. 3.
[36] Order, July 21, 2016, p. 4 (D.E. 120).
[37] Exh. 6 – Letter from Patel to Henderson, Sept. 16, 2016, pp. 1-8.
[38] Exh. 6 – Letter from Patel to Henderson, Sept. 16, 2016, pp. 1-2.
[39] Exh. 7 – Email from Matevia to Patel, Sept. 16, 2016, p. 1.

individual Defendants as well as the Excel entities, with no time restrictions and no plausible connection to the issues in this case (as discussed more extensively above).[40]

The next day, Defendants' counsel sent a letter to Henderson asking to confer about Plaintiffs' third-party subpoenas to Wells Fargo and Bank of America.[41] Addressing the possibility that Plaintiffs' new counsel had not been able to review the extensive procedural history of this case, Defendants' counsel specifically identified the docket entry numbers and relevant pages of Plaintiffs' two prior motions to compel financial disclosures as well as the docket entry numbers and pages of the Court's two prior discovery orders.[42]

On September 19, 2016 – 11 days before the deadline for Wells Fargo and Bank of America to respond to Plaintiffs' subpoenas – Plaintiffs' counsel sent a one paragraph email response to Defendants' counsel's detailed September 16, 2016 letter discussing the parties' pending discovery disagreements.[43] Without substantively responding to a single one of Defendants' proposals to resolve one or more of the parties' disagreements, Plaintiffs' counsel took the position that this "is not a routine discovery dispute subject to 'negotiations' of the parties" and stated that Plaintiffs intended to file a motion to show cause.[44]

Later that evening, counsel discussed by phone the parties' disagreements about the third-party subpoenas at issue as well as some of the other pending discovery disagreements. After the phone conference, Plaintiffs' counsel confirmed by email that Plaintiffs would withdraw the third-party subpoenas at issue here if Defendants would produce any Excel-issued W-2s for

---

[40] *See generally* Exh. 1 – Subpoena to Wells Fargo; Exh. 2 – Subpoena to Bank of America.
[41] Exh. 8 – Letter from Patel to Henderson, Sept. 17, 2016, pp. 1-2.
[42] Exh. 8 – Letter from Patel to Henderson, Sept. 17, 2016, p. 2, n. 1-3.
[43] Exh. 9 – Email from Henderson to Patel, Sept. 19, 2016, p. 1.
[44] Exh. 9 – Email from Henderson to Patel, Sept. 19, 2016, p. 1.

each of the individual Defendants for 2014 and 2015 as well as year-to-date compensation information for the individual Defendants.[45]

Defendants' counsel responded the next day by expressing Defendants' reluctance to produce personal financial information that the Court had already determined to be outside the scope of discovery while Plaintiffs still intended to seek a contempt order and sanctions against Defendants stemming from the parties' other discovery disagreements.[46] But Defendants' counsel made clear that Defendants would revisit Plaintiffs' proposal to resolve the third-party subpoena dispute if and when Plaintiffs provided a substantive response to the detailed discussions and proposals regarding all pending discovery issues presented in Defendants' counsel's September 16, 2016 letter.[47]

The next day – September 21, 2016 and nine days before Wells Fargo and Bank of America must respond to Plaintiffs' third-party subpoenas – Plaintiffs' counsel memorialized in an email that all discovery disputes could be resolved if Defendants agreed to produce the Excel-issued W-2s and wage information of the individual Defendants as well as the entire Quickbooks files for the Excel entities in their native form.[48] Plaintiffs' counsel also stated that a more detailed letter responding to Defendants' counsel's September 16, 2016 letter would be forthcoming, but that it would do "little more than confirm the parties are well past an impasse."[49] Put differently, either Defendants produce financial information regarding the individual Defendants' earnings and the entire business operations of the Excel entities (already

---

[45] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 2.

[46] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 2.

[47] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 2.

[48] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 1.

[49] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 1.

determined by the Court to be outside the scope of discovery) **or else** Plaintiffs will seek a contempt order and sanctions as well as enforce the third-party subpoenas to Wells Fargo and Bank of America.

With only seven days remaining before Wells Fargo and Bank of America must respond to Plaintiffs' third-party subpoenas, Defendants must seek protection from the Court now, even as Defendants await Plaintiffs' letter discussing the other pending discovery issues and consider the risks of disclosing financial information about every aspect of the Excel entities' business operations to Plaintiffs, who are direct competitors. (Even if the Quickbooks files were designated AEO as Plaintiffs' counsel suggests,[50] certain risks would remain, such as whether voluntary disclosure to Plaintiffs' counsel and experts would constitute breaches of the Excel entities' confidentiality agreements with Excel clients whose confidential and proprietary information is contained in the Excel entities' native Quickbooks files.)

3. **The Court should issue a protective order barring Plaintiffs from further action on their subpoenas to the banks and from seeking any further discovery regarding Defendants' finances without first obtaining this Court's permission.**

3.1. **Applicable Legal Standards.**

Parties may seek a protective order under Rule 26(c) to prevent disclosure of information sought through a third-party subpoena. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005). *See also* Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…."). A party may seek a protective order if a third-party subpoena demands irrelevant information. *Auto-Owners*, 231 F.R.D. at 429.

---

[50] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 1.

The issuance of a protective order is within the Court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). To determine good cause, the Court should weigh the non-moving party's interest in obtaining the discovery against the harm that would result from the discovery. *Farnsworth*, 758 F.2d at 1547.

### 3.2.    Good cause exists for a protective order.

The Court should find good cause to grant this Motion. For the following seven reasons, Plaintiffs' interest, if any, in obtaining the information sought by the subpoenas is far outweighed by the harm that would result from the discovery.

**First**, Plaintiffs have no interest in obtaining the information their subpoenas seek because all responsive material far exceeds the scope of discovery, as the Court has already determined twice. As detailed above, the requests in Plaintiffs' subpoenas demand substantially more financial information than even Plaintiffs' original request for production to Defendants, which was limited to "accounting documents, tax records, and financial statements."[51] The Court's first discovery order found that Plaintiffs' requests "are overbroad and need to be substantially justified and narrowed before the Court will require compliance."[52] During the second discovery hearing in this case, Plaintiffs' counsel even acknowledged that the Court had previously "found that [Plaintiffs'] request[s] for all financial information of Excel were overly

---

[51] *See* Plaintiffs' Motion to Compel, for Discovery Referral, and for Sanctions, p. 19 (D.E. 60) (restating Request No. 16 to J. Warrick, No. 9 to A. Warrick, No. 12 to G. Tapia, No. 12 to A. Tapia, No. 9 to NWE, and No. 10 to Excel).

[52] Order, May 18, 2016, p. 3 (D.E. 81).

broad."[53] But Plaintiffs' subpoenas here expand – not narrow – the scope of inquiry into Defendants' finances. In line with the Court's determination that Plaintiffs' first request for financial information to Defendants exceeded the scope of discovery,[54] the substantially broader and more invasive requests in Plaintiffs' subpoenas must necessarily also exceed the scope of discovery.

**Second**, the Court's July 21, 2016 discovery order more specifically holds that only information about revenues received by the Excel entities from seven specific energy suppliers meets the threshold for discovery here.[55] Plaintiffs' subpoenas are not limited to revenues, are not limited to the Excel entities, and are not limited to the seven energy suppliers listed in the Court's July 21, 2016 order. If Plaintiffs had a basis to justify additional financial disclosures, Plaintiffs should have filed a motion to reconsider in this case. Because Plaintiffs have not even asked the Court to revisit its ruling on the scope of discovery, the Court should simply apply its prior ruling and determine that Plaintiffs' subpoenas seek information well beyond the scope of discovery.

**Third**, Plaintiffs have no new evidence or argument to justify revisiting the Court's prior discovery orders, even if Plaintiffs had properly moved for reconsideration. In their first motion to compel, Plaintiffs argued that the financial information they sought was relevant to their damages model and thus, should be produced.[56] In their second motion to compel, Plaintiffs contended that financial information limited to the Excel entities and related to seven specific

---

[53] Exh. 12 – Hearing Transcript, July 13, 2016, p. 9:13-9:15.
[54] Order, May 18, 2016, p. 3 (D.E. 81).
[55] Order, July 21, 2016, p. 4 (D.E. 120).
[56] Plaintiffs' Motion to Compel, for Discovery Referral, and for Sanctions, pp. 19-20 (D.E. 60); Exh. 11 – Hearing Transcript, May 12, 2016, pp. 13:24-15:1, 37:14-39:6.

energy suppliers fell with the scope of discovery.[57] Plaintiffs once again pointed to the issue of damages to show relevance,[58] but Plaintiffs also argued that their claims related to misuse of trade secrets, confidential information, and proprietary materials made the Excel entities' financial information related to the seven named energy suppliers relevant.[59] The Court heard extensive argument from both sides on the question of relevance before issuing the narrow July 21, 2016 discovery order.[60] By this point, Plaintiffs have already tried establishing relevance with their damages model and the bulk of their causes of action, which are mostly based on the alleged misuse of trade secrets, confidential information, and proprietary materials. Little else remains.

**Fourth**, each and every one of the requests in Plaintiffs' subpoenas substantially harms the Tapias and the Warricks by depriving them of privacy rights conferred by Florida's constitution. "Florida courts have recognized a right of privacy in financial records under Article I, Section 23 of the Florida Constitution." *Inglis v. Wells Fargo Bank, N.A.*, No. 2:14-cv-677-FtM-29CM, 2016 WL 2854204, at *3 (M.D. Fla. May 16, 2016) (citing *Rowe v. Rodriguez-Schmidt*, 89 So.3d 1101 (Fla. 2d. Dist. Ct. App. 2012). Plaintiffs concede in their Second Amended Complaint that the Tapias and the Warricks are citizens and residents of Florida.[61] And as discussed above, the 22 requests for production in the two subpoenas collectively demand disclosure of essentially all of the personal financial and banking information over the entire history of the individual Defendants' respective banking relationships with Wells Fargo and Bank of America. The Court

---

[57] Plaintiffs' Motion to Compel Production and for Attorneys' Fees, pp. 7-11 (D.E. 91).
[58] Exh. 12 – Hearing Transcript, July 13, 2016, pp. 15:93-15:23, 19:17-19:25.
[59] Plaintiffs' Motion to Compel Production and for Attorneys' Fees, pp. 9-11 (D.E. 91).
[60] Exh. 12 – Hearing Transcript, July 13, 2016, pp. 4:14-36:15.
[61] Plaintiffs' Second Amended Complaint, ¶¶ 14-17.

should stop Plaintiffs from substantially harming the Tapias and the Warricks – four citizens and residents of Florida – by depriving them of their privacy rights under the Florida Constitution.

**Fifth**, allowing Plaintiffs to invade the constitutional privacy rights of the Tapias and the Warricks would be even more harmful here because Plaintiffs have only ever argued to the Court that Defendants' financial information is relevant to Plaintiffs' claims arising under Florida law,[62] which are before this Court only by way of supplemental jurisdiction. Not once in the course of briefing and arguing two motions to compel have Plaintiffs tried to connect their requests for Defendants' financial information to Plaintiffs' federal law claims. The Court should not let Plaintiffs use a discovery tool under a federal rule of procedure to advance their claims under Florida law without having to respect the Tapias' and the Warricks' rights under the Florida Constitution. *See also* FED. R. EVID. 501 (in any type of civil case in federal court, state law governs any privilege regarding claims or defenses arising under state law).

**Sixth**, letting Plaintiffs proceed with their subpoenas harms Defendants competitively, given that Plaintiffs are competitors and their subpoenas require disclosure of highly sensitive information about the Excel entities' "business or strategic plan," their "financial statements or projections," and their loans, credit lines, and overall financial condition.[63] Plaintiffs did not attempt to tailor the subpoenas to the claims or defenses in this case or to the permissible bounds of discovery articulated in the Court's prior orders.

**Seventh**, Plaintiffs' subpoenas would harm Defendants by forcing them to re-litigate the scope of discovery in multiple different forums, even though this Court has already ruled on the

---

[62] *See, e.g.,* Plaintiffs' Motion to Compel Production and for Attorneys' Fees, p. 8-9 (D.E. 91).
[63] Exh. 1 – Subpoena to Wells Fargo, pp. 11-12 (Requests Nos. 2-6); Exh. 2 – Subpoena to Bank of America, pp. 11-12 (Requests Nos. 2-6).

issue. Unless this Court grants this Motion, Defendants would be forced to seek relief in the district courts where Plaintiffs' subpoenas require compliance by the banks: Los Angeles, CA for Wells Fargo (Central District of California) and Newark, DE for Bank of America (District of Delaware).[64] *See* Fed. R. Civ. P. 45(d)(1),(3) (authorizing the "court for the district where compliance is required" to quash or modify subpoenas or to protect persons from undue burden or expense). Having to re-litigate the scope of discovery in multiple different courts would cost Defendants additional legal fees and expenses and create the possibility of inconsistent rulings by sister courts.

In sum, Plaintiffs have no permissible interest in the information their subpoenas seek, which the Court has already deemed beyond the scope of discovery. But unless the Court grants this Motion, the individual Defendants would be deprived of their privacy rights under the Florida Constitution, the Excel entities would be harmed by the release of highly sensitive business information that Plaintiffs, as direct competitors, can exploit in the marketplace, and Defendants would be harmed by having to re-litigate the scope of discovery in multiple different courts and by potentially having to address inconsistent rulings. For these reasons, the Court should grant this Motion.

### 3.3.    Granting this Motion would be consistent with precedent.

The Middle District has uniformly held that third-party subpoenas seeking financial information must be narrowly tailored. *See, e.g., Auto-Owners*, 231 F.R.D. at 430; *Popoli v. Ft. Myers Lodge #1899 Loyal Order of Moose, Inc.*, No. 2:15-cv-311-FtM-29CM, 2015 WL 9031929, at

---

[64] Exh. 1 – Subpoena to Wells Fargo, p. 1; Exh. 2 – Subpoena to Bank of America, p. 1.

*2 (M.D. Fla. Dec. 16, 2015); *Cornett v. Lender Processing Services Inc.*, No. 3:12-cv-233-J-32TEM, 2012 WL 5305990, at *2 (M.D. Fla. Oct. 29, 2012).

The *Auto-Owners* case is particularly instructive, as the subpoenas at issue sought from third-party banks, among other things, all of the defendants' "bank statements and cancelled checks for the previous two years…." *Auto-Owners*, 231 F.R.D. at 428. Unlike Plaintiffs in this case, the plaintiff in *Auto-Owners* at least attempted to tailor its third-party subpoenas by requesting just a few types of banking records from a specific two-year time period. *Id*. at 430. And yet still the court granted a protective order as to the financial information sought, finding that the plaintiff's "discovery regarding financial matters is grossly overbroad and irrelevant." *Id*. Applying the reasoning and decision from *Auto-Owners* – where the Middle District found a subpoena "grossly overbroad" despite being limited to a few categories of financial records and to a period of two years – the Court here should issue a protective order as to Plaintiffs' subpoenas, which are not limited to any time period and which seek virtually all banking records related to Defendants.

Moreover, the court in *Auto-Owners* described the limited requests for banking records in that case to be essentially discovery "in aid of execution of a judgment that has not yet been entered." *Id*. Such "discovery prior to the entry of judgment is improper." *Id*. Here, Plaintiffs have only proven that they are capable of making allegations and asserting cause of action against Defendants. But this case is a long way off from a judgment, and to date, the only time Plaintiffs filed a motion for which the Court had to evaluate evidence (not just allegations) to issue a ruling, the Court "agree[d] with Defendants that Plaintiffs' best evidence of irreparable harm consists of

conclusory statements no better than allegations in a complaint."[65] Allegations may be enough

for certain types of discovery, but not for the information demanded by Plaintiffs' subpoenas. *Id.*

Thus, the Court should grant this Motion and prevent Plaintiffs from engaging in what is

effectively post-judgment discovery long before Plaintiffs have earned that right by proving their

case to a jury.

**4.    Alternatively, the Court should quash Plaintiffs' third-party subpoenas because the subpoenas require disclosure of protected matter.**

A party has standing to quash third-party subpoenas "if the party alleges a 'personal right

or privilege' with respect to the subpoenas." *Auto-Owners*, 231 F.R.D. at 429. District courts

have disagreed on whether parties' personal rights or privilege in their financial records are

sufficient to confer standing to quash a third-party subpoena. *C.f., e.g., Auto-Owners*, 231 F.R.D.

at 429 (no standing to quash subpoenas regarding financial records) *with Manusco v. Florida*

*Metropolitan University, Inc.*, No. 09–61984–CIV, 2011 WL 310726, at *1 (S.D. Fla. Jan. 28, 2011)

(plaintiff had standing to challenge a subpoena directed to his bank).

Earlier this year, Judge Mirando of the Middle District offered new insight on the issue of

a party's standing to quash a third-party subpoena seeking financial records. *See Inglis*, 2016 WL

2854204, at *3. Noting that many prior decisions from the Middle District have denied standing

to quash a subpoena aimed at bank records based on the general rule that a party has no personal

right in the business records of third-party banks, Judge Mirando considered if the right of

privacy in financial records arising under the Florida Constitution would change the analysis. *Id.*

at *2-3. As a diversity jurisdiction case, state law applied in *Ingles*, and thus, Judge Mirando found

---

[65] Order Denying Preliminary Injunction, Jan. 13, 2016, p. 4 (D.E. 53).

that standing to quash a third-party subpoena seeking financial records did exist based on the

Florida constitutional right to privacy. *Id.* at *3.

The Court should apply the same reason here with respect to Plaintiffs' state law claims

that are only before this Court through supplemental jurisdiction. As stated above, Plaintiffs have

never even attempted to establish the relevance of Defendants' financial information to

Plaintiffs' federal law claims. And thus, the Court should give effect to the individual

Defendants' state constitutional privacy rights and recognize standing to quash Plaintiffs' third-

party subpoenas. *See also* Fed. R. Evid. 501 (in any type of civil case in federal court, state law

governs any privilege regarding claims or defenses arising under state law).

Rule 45(d)(3)(A) requires that a subpoena demanding "disclosure of privileged or other

protected matter" be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A). As discussed

extensively above, Plaintiffs' subpoenas demand disclosure of the Tapias' and the Warricks'

personal financial information arising from their entire banking relationships with Wells Fargo

and Bank of America. This personal financial information is protected matter under Florida law,

and thus, the Court should quash Plaintiffs' subpoenas as per Rule 45(d)(3)(A).

**5.      The Court should at least award reasonable attorney's fees due to Plaintiffs' abuse
of the subpoena power.**

Under Rule 26(b)(1), the scope of discovery includes only non-privileged matters that are

**both** "relevant to any party's claim or defense" **and** "proportional to the needs of the case…."

Fed. R. Civ. P. 26(b)(1). Moreover, discovery must not be propounded for "any improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

Fed. R. Civ. P. 26(g)(1)(B)(ii).

Here, Plaintiffs made no effort to tailor their subpoenas to the Court's prior rulings on the scope of discovery. Plaintiffs did not even limit their third-party requests to what Plaintiffs had initially sought from Defendants. And instead of asking the Court to reconsider its prior ruling, Plaintiffs went directly to third-party banks, demanding some of the most sensitive, private, and confidential information that can possibly exist. For example, by seeking the credit reports and histories of the Tapias and the Warricks reviewed by the banks in connection with loan and credit applications, Plaintiffs are trying to obtain exactly the type of information – social security numbers, past addresses, driver's license numbers, and the like – necessary for the type of identity theft that can land a person in prison for up to 15 years. *See* 18 U.S.C. § 1028(b). No proper purpose can conceivably exist for Plaintiffs to demand that type of information.

But perhaps Plaintiffs do not intend to commit federal identity theft crimes with the information they hope to obtain through their subpoenas. Plaintiffs' most recent offer to resolve the parties' discovery disputes reveals a non-criminal, but still improper purpose behind Plaintiffs' subpoenas. Plaintiffs now claim to be willing to withdraw their third-party subpoenas at issue here and to forego seeking a contempt order and sanctions against Defendants arising from the parties' reasonable differences of opinion about the meaning and scope of the Court's July 21, 2016 order **in exchange for** W-2s and personal compensation information about the individual Defendants and the full, native version of the Excel entities' Quickbooks files.[66]

Of course, the Court has already denied Plaintiffs discovery into the finances of the individual Defendants and into the Excel entities' overall financials. (Plaintiffs have not actually even propounded a request for production for the native Quickbooks files.) And yet because the

---

[66] Exh. 10 – Email String Among Counsel, Sept. 21, 2016, p. 1.

requests in Plaintiffs' subpoenas are so invasive that the release of even some of the responsive information could impact all aspects of the Tapias' and the Warricks' personal lives – for example, through the misuse of each individual's key personal identifying numbers and documents – Defendants are left to seriously consider if they should produce what the Court has previously denied Plaintiffs as well as native Quickbooks files that contain private, confidential, and proprietary information of the Excel entities' clients (such as pricing, payment terms, and current and planned sales campaigns) that the Excel entities have a duty not to disclose.

Put differently, Plaintiffs created a real risk of substantial personal harm to the individual Defendants by issuing the third-party subpoenas, and then offered to eliminate the very risk Plaintiffs created in exchange for Defendants agreeing to produce information the Court has already ruled to be outside the scope of discovery and that would breach agreements with third-parties unrelated to this case. This is not a good faith attempt to negotiate a compromise. This is extortion.

So in the best case scenario, Plaintiffs issued third-party subpoenas as overbroad and invasive as the ones here as a means to extort Defendants into producing information the Court has deemed undiscoverable. In the worst case scenario, Plaintiffs hope to convince Wells Fargo and Bank of America to disclose information about the individual Defendants that could be misused to completely destroy their credit or worse. Either way, Plaintiffs' conduct should not go without consequence, or soon it will be the norm for all aspects of an individual litigant's personal life – no matter how irrelevant to the issues in a case – to be fair game.

Thus, Defendants ask the Court to use its discretion to tailor a measured and proportional sanction for the issuance of Plaintiffs' third-party subpoenas to Wells Fargo and Bank of America

and suggest that attorney's fees related to the subpoenas and this Motion be awarded. If the Court agrees, Defendants' counsel will submit a fee application with supporting evidence.

### Prayer for Relief

For the above-stated reasons, Defendants ask the Court to issue a protective order barring further action by Plaintiffs on their third-party subpoenas to Wells Fargo and Bank of America, barring Plaintiffs from seeking further discovery about Defendants' finances without first obtaining permission from the Court, quashing Plaintiffs' third-party subpoenas to Wells Fargo and Bank of America, awarding attorney's fees or otherwise sanctioning Plaintiffs in the sound discretion of the Court, and granting Defendants all other relief in law or at equity to which they are entitled.

Date: September 23, 2016.

By: /s/ Hiren P. Patel

Joel Ewusiak
Fla. Bar No.:  0509361
100 Main Street, Suite 205
Safety Harbor, Florida 34695
P:      727.286.3559
F:      727.286.3219
E:      joel@ewusiaklaw.com

Hiren P. Patel (*pro hac vice*)
1113 Vine Street, Suite 230
Houston, Texas 77002
P:      713.579.9700
F:      832.460.6530
E:      hpatel@patelervin.com

*Counsel for Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that Defendants' counsel conferred with Plaintiffs' counsel repeatedly in good faith to resolve the issues in this Motion. Attempts to confer include the several written letters and emails exchanged and attached to this Motion as well as a phone conference on September 19, 2016.

/s/ Hiren P. Patel
**Hiren P. Patel**
Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on September 23, 2016, the foregoing document was electronically filed using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Hiren P. Patel
**Hiren P. Patel**
Counsel for Defendants