IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UTILITIES MARKETING GROUP, LLC, AGR FIELD SERVICES, LLC, and ENERGY PROFESSIONALS, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>JAMES WARRICK, ANGELA WARRICK, GEORGE TAPIA, AMANDA TAPIA, EXCEL NETWORK, LLC, EXCEL RESOURCES, LLC, NWELITE MARKETING, LLC, NWE, LLC, and UNKNOWN JOHN DOES,<br><br>    Defendants/Third-Party Plaintiffs,<br><br>vs.<br><br>STEPHEN UPHAM,<br><br>    Third-Party Defendant. | Case No. 8:15-cv-01966-RAL-TBM |

**PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE AND MOTION FOR RULE 37 DISCOVERY SANCTIONS AGAINST DEFENDANTS, JAMES WARRICK, ANGELA WARRICK, GEORGE TAPIA, AMANDA TAPIA, EXCEL NETWORK, LLC, EXCEL RESOURCES, LLC, NWELITE MARKETING, LLC AND NWE, LLC**

NOW COME Plaintiffs, Utilities Marketing Group, LLC ("UMG"), AGR Field Services, LLC ("AGRFS"), and Energy Professionals, LLC ("EPROS") (collectively, "Plaintiffs"), through counsel, and, pursuant to Fed. R. Civ. P. 37, hereby move this Honorable Court to issue an Order to Show Cause and then impose sanctions against Defendants, James Warrick, Angela Warrick, George Tapia, Amanda Tapia, Excel Network, LLC, Excel Resources, LLC, NWElite

2392311.4

Marketing, LLC and NWE, LLC (collectively, "Defendants"), for continuing discovery abuses, including Defendants' failure to comply with this Court's July 21, 2016 Order compelling Defendants to produce certain documents. (ECF No. 120). More specifically, Plaintiffs request the Court enter an order finding and requiring the following:

1. Defendants and their counsel are in civil contempt of the Court's July 21, 2016 Order (ECF No. 12);

2. Defendants must immediately produce the QuickBooks files (in their current condition) for Defendants Excel Network and Excel Resources;

    a. Designating the QuickBooks files as "Attorney Eyes Only;"

    b. Allowing for information/data derived from the QuickBooks files to be designated as "Confidential" for purposes of inclusion in any expert report;

3. An award to Plaintiffs of attorney fees and expenses related to the preparation and filing of this Motion as well as fees and expenses associated with Plaintiffs' counsel's informal efforts to convince Defendants' to abide by the Court's July 21, 2016 Order;

4. The continuation of the depositions of the individual Defendants (James Warrick, Angela Warrick, Amanda Tapia, and George Tapia) if the Plaintiffs determine in their discretion, after review of the QuickBooks files, additional testimony is necessary;

5. An award to Plaintiffs of fees and expenses associated with any continuation of the depositions of any of the individual Defendants; and

6. Any further relief or sanctions the Court deems appropriate under these circumstances.

Grounds for this Motion are set forth in the following Memorandum of Law.

## Memorandum of Law

### I. INTRODUCTION AND BACKGROUND

Over these last twelve months, Defendants have consistently refused to produce relevant, non-privileged, responsive documents to Plaintiffs' discovery requests – despite being ordered

twice to do so – choosing instead to play a game of "hide the ball" meant to do nothing other than delay the progression of this litigation and prevent Plaintiffs from prosecuting their claims. Most recently, this Court ordered Defendants to, among other things, produce:

> [D]ocuments, such as revenue reports, sales figures, sales reports, income statements, and/or other documents that evidence any revenue received from Commerce Energy, Entrust, Family Energy, IDT Energy/Residents' Energy, Just Energy, Liberty Power, and Spark Energy from September 19, 2014, to the present.

July 21, 2016 Order (ECF No. 120, PageIDs 2306-07). Defendants have admitted they possess responsive records – in the form of QuickBooks records kept in the ordinary course of business. But they have refused to produce the QuickBooks records and instead have provided only an unverifiable 11-page revenue summary. These summary reports do not satisfy the requirements of the July 21 Order and do not reflect all of the revenue received.

Counsel for Plaintiffs raised these shortcoming almost immediately upon receiving the production and have sought for nearly two months now to convince Defendants to comply with the Court's July 21 Order. Despite these efforts, Defendants continue to refuse to comply with this Order. As such, this Court must order Defendants to show cause as to why they have failed to comply with the July 21, 2016 Order, and impose sanctions for their refusal to do so.

### A. Procedural History

As this Court is aware, on October 30, 2015, Plaintiffs served requests for production, interrogatories, and requests for admissions on each Defendant. Defendants failed to produce any documents. On January 15, 2016, Plaintiffs filed a Motion to Compel Responses to Document Requests (Dkt. 56), which the Court denied, ordering the parties to meet and confer personally to try to resolve their dispute. (Dkt. 57). Meetings held on January 21, 2016 and March 29, 2016, failed to resolve the original dispute so, on April 18, 2016, Plaintiffs filed a

second Motion to Compel. (Dkt. 60). An Order compelling Defendants to respond to discovery was entered on May 18, 2016. (Dkt. 81). Though granting Plaintiffs' motion as it pertained to the vast majority of the requests, the Court declined to compel Defendants to respond to two requests unless those requests were narrowed. *Id*. at pp. 1151-52.

Per the May 18 Order, Plaintiffs attempted in good faith to narrow the scope of their requests, yet Defendants still refused to produce <u>any</u> documents. Thus, on May 31, 2016, Plaintiffs filed a third Motion to Compel Production (Dkt. 91). On July 21, 2016, following a hearing, the Court entered an Order compelling Defendants to respond to Plaintiffs' requests. (Dkt. 120). The portion of the Court's Order at issue in this motion required the Defendants to produce "[D]ocuments, such as revenue reports, sales figures, sales reports, income statements, and/or other documents that evidence any revenue received from Commerce Energy, Entrust, Family Energy, IDT Energy/Residents' Energy, Just Energy, Liberty Power, and Spark Energy from September 19, 2014, to the present." July 21, 2016 Order (ECF No. 120, PageIDs 2306-07).

Rather than comply fully with that Order by producing business records then in their possession, Defendants **created** the revenue summary (hereinafter "Litigation Bank Statement Reports") purportedly reflecting payments from the seven companies identified in the Order. That is, despite having typical accounting and finance records in their possession, Defendants did not produce any of the documents created and kept contemporaneously in the ordinary course of business that would reflect the revenue stream from the companies at issue.

### B. The Efforts to Obtain Compliance

The day after the production, counsel for Plaintiffs raised Defendants' failure to comply with the July 21 Order. Counsel specifically raised the fact "there are no Excel accounting

records of any kind in the production (instead there are just a handful of bank statements)." (August 12, 2016 email from B. Kimrey to H. Patel). Plaintiffs' counsel subsequently conferred with Defendants' counsel on August 25, again seeking compliance with the July 21 Order.

By letter of August 26, 2016, counsel for the Defendants sought to justify Defendants' failure to abide by the July 21 Order claiming "the Court did not order production of 'accounting records.' Nor did the Court order production of any and all documents that might reflect revenues from the seven energy suppliers at issue." (*See* August 26, 2016 letter, p. 2, attached as Exhibit 1). Defendants' counsel asserted "the Court found that Plaintiffs are entitled to 'some measure of discovery into the financial relationship' between Defendants and the seven listed entities. And so the Court directed Defendants to disclose the revenues received from those seven entities." *Id*. Defendants' Counsel also contended "the Court did not specifically order production of any and all 'revenue reports, sales figures, sales reports, income statements…The Court, by using the words 'such as' immediately before this list of document categories, offers the documents categories as suggestions of the types of documents that might be at issue." *Id*. That is, Defendants have taken the position the July 21 Order merely suggested the type of documents they were required to produce and, rather than produce the existing financial records created nearly contemporaneously with the transactions at issue and kept in the usual course of business, they were free to produce the Litigation Bank Statement Reports which they created solely for the purpose of this litigation.

As reflected in the August 26 letter, during the August 25 meet and confer conference between counsel, the topic of Defendants' production of the company's QuickBooks files was discussed. Defendants' counsel represented that Defendants would not produce such files

because he claimed "it is not Defendants' practice to continually keep QuickBooks information up-to-date and current." *Id*. at p. 6.

In a further effort to obtain Defendants' compliance with the July 21 Order, Plaintiffs' counsel held a September 8 telephone conference with Defendants' counsel followed by a September 10 letter. A copy of the September 10, 2016 letter is attached as Exhibit 2. As reflected in the September 10 letter, Plaintiffs again made it clear the Defendants were required to produce contemporaneous financial records (*e.g.* revenue reports, sales figures, sales reports, and income statements), and they could not satisfy their obligations to comply with the July 21 Order by creating a new summary report generated solely for the purposes of the litigation. (September 10, 2016 letter, p. 2). Moreover, Plaintiffs' counsel reiterated the Litigation Bank Statement Reports produced by Defendants did not contain all revenue from the seven entities then at issue. *Id*. Finally, the undersigned again raised the Defendants' failure to produce the QuickBooks files, explaining the Defendants' cannot refuse to produce the files because they deem them not up-to-date. *Id*. at 3.

Defendants' counsel responded by way of a letter dated September 16, 2016. A copy of this letter is attached as Exhibit 3. In his September 16 letter, Defendants' counsel reiterated his position that the Court's July 21 Order was merely advisory as to the type of documents the Defendants were required to produce. Indeed, he sought to parse the Court order as follows:

> The Court's July 21, 2016 order compelled production of documents that "evidence revenue received from Commerce Energy, Entrust, Family Energy, IDT Energy/Residents' Energy, Just Energy, Liberty Power, and Spark Energy from September 19, 2014, to the present. The Court predicated its order on a finding that Plaintiffs are entitled to "some measure of discovery into the financial relationship" between Defendants and the seven listed entities. And so the Court did not order production of "accounting records" or even "all" records that reflect revenues from the seven energy suppliers at issue. Nor did the Court order production of

6

> *any and all* "revenue reports, sales figured, sales reports, income statements" (emphasis original). **By preceding this list of document categories with the words "such as," set off by a comma, the Court clearly offered the list of categories as suggestions.** (emphasis added)

(September 16, 2016 letter, pp. 1-2). Thus, Defendants' justification for not producing contemporaneous accounting records in their possession reflecting revenues received is predicated upon their argument as to the placement by this Court of a comma. This position is simply absurd, not at all consistent with the letter, spirit or intent of the Court's Order and contrary to Local Rule 2.04(h).[1]

From September 28 to October 3, 2016, Plaintiffs' counsel was in Florida for depositions of the individual Defendants, including Amanda Tapia, the Chief Financial Officer for both Excel entities. Plaintiffs' counsel used the depositions to discover precisely what responsive documents exist that Defendants have failed to produce. In this regard, Mrs. Tapia testified the Excel entities began using QuickBooks when they first began operations; she or her staff regularly maintain and update the QuickBooks files for both Excel entities (contrary to defense counsel's prior representations); and the QuickBooks files include revenue/payment data. In fact, Mrs. Tapia confirmed the QuickBooks files contain data that would allow for the identification of every payment received from suppliers on an individual basis.[2]

Testimony obtained during the recent depositions also confirmed the Litigation Bank Statement Reports are not complete, contrary to the representations of Defendants' counsel and, more importantly, in violation of the July 21 Order. Thus any suggestion by Defendants the

---

[1] Plaintiffs note Defense counsel has already once been admonished by the Court to comply with Local Rule 2.04(h). *See* July 15, 2016 Order (Dkt. 119).

[2] The final transcript of Mrs. Tapia's testimony is not yet available. Plaintiffs have, however, obtained a draft of the transcript. Because the time for Defendants to designate any testimony from Mrs. Tapia as Confidential has not yet run, the draft transcript is not attached. If the Court deems the transcript necessary for resolution of this dispute, the Plaintiffs can submit a copy of the draft transcript under seal or *in camera*.

2392311.4

Litigation Bank Statement Reports accurately reflect all revenue received from the original seven energy suppliers at issue is now belied by their testimony and the Defendants should be sanctioned on this basis alone.

As an example of Defendants' failure to produce complete revenue information in violation of the Court's Order, evidence uncovered during the recent depositions demonstrates Excel Network executed an agreement with SFE Energy Inc. and Family Energy Inc. (collectively "SFE") on August 20, 2015, to provide door-to sales for SFE. On September 3, 2015, Excel Resources executed an agreement with SFE to provide telemarketing services. Mr. Warrick testified Excel Network and Excel Resources have indeed each provided services to SFE. But Defendants have not produced any revenue information related to SFE although they were ordered to do so.

As another example, Mr. Warrick testified Excel Network has provided door-to-door sales services to IDT. Defendants have not produced any information related to revenue received by Excel Resources for these door-to-door services provided to IDT.

As yet another example of Defendants' failure to produce complete revenue data required by the July 21 Order, Excel Resources executed an agreement with Just Energy dated November 2, 2015, to provide telemarketing services. Defendants have not produced any information related to revenue received by Excel Resources for the telemarketing services provided to Just Energy under this contract.

As still another example of Defendants defiance of this Court's Order, evidence adduced during the depositions demonstrates Excel Network was receiving revenues for sales made on behalf of Spark Energy as early as November 2014. The information produced by the Defendants reflects revenues from Spark Energy sales in March 2016 only. Thus, there may be

more than a full year of revenue information related to Spark Energy missing from Defendants' production.

On October 4, 2016, one day after the depositions of the Defendants were completed, in light of various issues raised during the depositions, Plaintiffs' counsel again wrote to Defendants' counsel imploring Defendants to produce the QuickBooks files in compliance with the Court's July 21 Order. A copy of the October 4, 2016 letter is attached as Exhibit 4. The undersigned explained "the only way in which my clients, the Court or the jury can have confidence your clients have produced all information related to revenues derived directly or indirectly or otherwise from converted relationships is through the production of the entire file as it exists. Finally, on this point, production of the entire QuickBooks files will resolve the dispute we have been having over your clients' satisfaction (or lack thereof) of the Court's July 21 Order." (October 4, 2016 letter, p. 3). Plaintiffs even offered to allow Defendants to produce the files under an Attorneys' Eyes Only designation. *Id*. Due to pressing deadlines, Plaintiffs set a deadline of October 10, 2016, for the production of the QuickBooks file to avoid seeking Court intervention.[3]

Defendants' Counsel indicated by e-mail of October 6 he would respond to the October 4 letter on that day or the next day (October 7) at the latest. No response came. Defendants'

---

[3] Plaintiffs maintain the only way for there to be any confidence in the information is for the entire files to be produced. Defendants should not be allowed to cull through the data, especially given their conduct in discovery thus far. And any concern Defendants have about the QuickBooks files containing sensitive information can be addressed through an attorneys' eyes only designation.

Moreover, as discussed in footnote 1, additional energy suppliers have been converted by Defendants and revenues from these additional suppliers now is at issue. Further still, the recent deposition testimony revealed the Excel entities derive significant revenues through subcontract relationships. As an example, Excel Network has served as a subcontractor to Empower Sales, which in turn had a direct sales relationship/contract with Spark Energy, the energy supplier. The Defendants have been ordered to produce information concerning revenues derived from Spark Energy. Although Excel Network has made sales on behalf of Spark Energy, because it received its revenues for those sales from Empower Sales rather than directly from Spark Energy, it has not produced this revenue information. Plaintiffs have asked Defendants to voluntarily produce such subcontract revenue. Thus far Defendants have refused. Plaintiffs anticipate filing yet another motion to compel within the next few days unless these issues can be satisfactorily resolved.

counsel then claimed illness and promised a response by the morning of October 11. Still no response has been provided.

Over the course of nearly three months, Defendants have refused to comply with the Court's July 21 Order. Resolution of this issue is simple – Defendants need to produce the QuickBooks files. Yet, rather than comply and produce the information in their possession, Defendants have sought to parse the language of the Court's Order. At this point, Plaintiffs have spent far too much time, energy and expense debating this issue with Defendants; it is now necessary for the Court to order the Defendants to show cause why they have failed to comply with the Court's July 21, 2016 Order and impose sanctions for their refusal to do so.

## II. LAW AND ANALYSIS

### A. Fed. R. Civ. P. 37 Standard

"It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." *Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1147 (11th Cir.2006). As this Court has pointed out, "the court has broad authority under Rule 37 to impose sanctions upon a party for failure to provide or permit discovery and for failing to obey a court order." *Vega v. Amer Int'l Corp.*, M.D.Fla. No. 8:08-cv-128-T-TBM, 2009 U.S. Dist. LEXIS 30323, at *4 (Apr. 3, 2009) (McCoun, M. J.) (citing *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999)). Specifically, Rule 37 sets forth sanctions for violation of a discovery order, including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to" these sanctions, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

"Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, M.D.Fla. No. 6:07-cv-222-Orl-35KRS, 2009 U.S. Dist. LEXIS 122196, at *74 (Aug. 3, 2009) (quoting *Gratton*, 178 F.3d at 1374). "Permissible purposes of sanction[s] include: 1) compensating the court and other parties for the added expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others from engaging in similar conduct; and 4) penalizing the guilty party or attorney." *Id.* at *75 (quoting *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)). "The Court need not find that the party or its counsel acted willfully or in bad faith before imposing Rule 37sanctions." *Id.*, citing *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994). For purposes of Rule 37, an incomplete response is to be treated as a failure to respond. Fed. R. Civ. P. 37(a)(3).

Moreover, courts have embraced "an inherent contempt authority" that encompasses the ability to impose civil contempt. *Serra Chevrolet*, 446 F.3d at 1147 (quoting *International Union, UMW v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 2559 (1994)). Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id.*, quoting *International Union*, 512 U.S. at 827-28. "A finding of a failure to comply with discovery orders is a finding of civil contempt." *Id.*, quoting *International Union*, 512 U.S. at 833. Once the party moving for contempt makes a *prima facie* showing that a party subject to a court order has violated the court's orders, the burden shifts to that party to produce evidence explaining his noncompliance. *United States v. Bosset*, M.D.Fla. No. 8:01-cv-2154-T-17TBM, 2002 U.S. Dist. LEXIS 25021, at *8 (Nov. 19, 2002) (McCoun, M. J.) (citing *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991)). That party must demonstrate an inability to comply with the court's order by showing that he has made "in good faith all reasonable efforts to comply." *Id.*, quoting *United States v. Ryan*, 402 U.S. 530, 534, 29 L. Ed. 2d 85, 91 S. Ct. 1580 (1971).

### B. Plaintiffs are Entitled to Sanctions Against Defendants for Defendants' Failure to Comply with this Court's July 21, 2016 Discovery Order

Defendants have in their possession QuickBooks files that will, among other things, identify all revenues received from certain Excel Network and Excel Resources clients. Despite having this information, Defendants produced the Litigation Bank Statement Reports, which are not documents created in the ordinary course of business, were only created for purposes of responding to the Court's Order and have been proven to be incomplete. The Plaintiffs are not required to rely upon information compiled by Defendants solely for purposes of the litigation. Conversely, the QuickBooks files are maintained in the ordinary course of business and, according to the CFO, Mrs. Tapia, are what the Excel Entities' outside accountant relies upon to

prepare appropriate tax filings. Thus, the QuickBooks files should carry some indicia of reliability.

The Defendants continue to refuse to fully comply with their discovery obligations as well as the clear and direct orders from this Court, and as such, the Court should award sanctions against Defendants for their willful, repeated, and unjustified failure to comply with this Court's July 21, 2016 discovery order. "Rule 37 'places the burden on the disobedient party to avoid expenses by showing that his failure [to comply] is justified or that special circumstances make an award of expenses unjust.'" *Bray & Gillespie*, 2009 U.S. Dist. LEXIS 122196 at \*65 (quoting *Hawkins v. Fulton County*, 96 F.R.D. 416, 421 (N.D. Ga. 1982)).

Here, no reasonable person could conclude that Defendants' failure to produce the documents responsive to Plaintiffs' requests, after being ordered to do so, was reasonable or justified. Indeed, as evidenced by Defendants' nearly 12-month campaign to hinder, derail, and flat-out prevent Plaintiffs' discovery efforts, Defendants' failure to comply with the Court's July 21, 2016 Order is one more example of their unreasonable conduct throughout this action.

Finally, Plaintiffs have suffered prejudice and unnecessary expense as a result of Defendants' actions. As a matter of law, "[p]rejudice from unreasonable delay is presumed… Failure to produce documents as ordered is sufficient prejudice, whether or not there is belated compliance." *Id.* at \*70 (quoting *In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 665 (M.D. Fla. 2007)). Here, it is beyond dispute Plaintiffs have incurred unnecessary expenses and delays in attempting to obtain Defendants' compliance with this Court's Order. As a result, this Court should impose sanctions against Defendants.

III. **CONCLUSION**

"It is axiomatic that attorneys owe a duty of candor to the court." *Id.* at *86. "Moreover, attorneys also have a duty to deal honestly and fairly with opposing counsel." *Id*. Defendants' counsel has clearly failed to fulfill these duties. *See id.; Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir. 1986). As set forth by courts in the Middle District of Florida, "Our judicial machinery is dependent upon the full support of all members of the bench and bar. Advocacy does not include 'game playing.' Conduct such as that engaged in here must not, cannot and will not be tolerated." *Bray & Gillespie*, 2009 U.S. Dist. LEXIS 122196 at *86 (quoting *Pesaplastic,* 799 F.2d at 1522-23). Game playing is precisely what the Defendants have been doing.

For the foregoing reasons, Plaintiffs respectfully request an Order for Defendants to show cause why they have failed to comply with the July 21, 2016 Order and an Order finding and requiring the following:

1. Defendants and their counsel are in civil contempt of the Court's July 21, 2016 Order (ECF No. 12);

2. Defendants must immediately produce the QuickBooks files (in their current condition) for Defendants Excel Network and Excel Resources;

    a. Designating the QuickBooks files as "Attorney Eyes Only;"

    b. Allowing for information/data derived from the QuickBooks files to be designated as "Confidential" for purposes of inclusion in any expert report;

3. An award to Plaintiffs of attorney fees and expenses related to the preparation and filing of this Motion as well as fees and expenses associated with Plaintiffs' counsel's informal efforts to convince Defendants' to abide by the Court's July 21, 2016 Order;

4. The continuation of the depositions of the individual Defendants (James Warrick, Angela Warrick, Amanda Tapia, and George Tapia) if the Plaintiffs determine in

2392311.4

    their discretion, after review of the QuickBooks files, additional testimony is necessary;

5. An award to Plaintiffs of fees and expenses associated with any continuation of the depositions of any of the individual Defendants; and

6. Any further relief or sanctions the Court deems appropriate under these circumstances.

## CERTIFICATE OF CONFERRAL

    Pursuant to Local R. 3.01, the undersigned certifies that counsel for Plaintiffs attempted to confer with counsel for Defendants in a good faith effort to resolve the issues raised by this motion, but the parties did not agree to a resolution of this motion.

| | |
|---|---|
| Dated: October 11, 2016 | By: /s/ Toby K. Henderson |
| | Toby K. Henderson |
| |     Trial Counsel |
| | James A. Dyer |
| | SEBALY SHILLITO + DYER |
| | A Legal Professional Association |
| | 1900 Kettering Tower |
| | 40 North Main Street. |
| | Dayton, Ohio 45423-1013 |
| | (937) 222-2500 |
| | (937) 222-6554 fax |
| | thenderson@ssdlaw.com |
| | jdyer@ssdlaw.com |
| | *Co-Counsel for the Plaintiffs* |

CO-COUNSEL for the PLAINTIFFS

James B. Lake
THOMAS & LoCICERO PL
601 S. Boulevard
Tampa, FL 33606
Telephone: 813-984-3060
Facsimile: 813-984-3070
jlake@tlolawfirm.com

15

2392311.4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Toby K. Henderson
Toby K. Henderson

2392311.4